# 24-3308

## United States Court of Appeals
## for the Second Circuit

CHARLES MILLS, CRAIG SOTOMAYOR, BRADEN HOLLIDAY,

*Plaintiffs-Appellants,*

*against*

NEW YORK CITY, NEW YORK,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Southern District of New York

### BRIEF FOR APPELLEE

MURIEL GOODE-TRUFANT
*Corporation Counsel*
*of the City of New York*
Attorney for Appellee
100 Church Street
New York, New York  10007
212-356-0843
jshweder@law.nyc.gov

RICHARD DEARING
DEVIN SLACK
JEREMY W. SHWEDER
GEOFFREY E. CURFMAN
   *of Counsel*

June 23, 2025

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................iv

PRELIMINARY STATEMENT...........................................................1

ISSUE PRESENTED..........................................................................3

STATEMENT OF THE CASE............................................................3

    A. Handgun licensing, acquisition, and carrying in New
        York City, and this action raising facial challenges to
        several laws and regulations...............................................3

        1. The licensing fees rule ...................................................4

        2. The anti-trafficking law ................................................5

        3. The one-handgun carry rule .........................................6

        4. The repealed two-handgun listing rule.........................7

        5. The authorization form rule and the handgun
           registration rule ...........................................................8

        6. The dealer reporting law................................................9

    B. The district court's dismissal of the action ........................9

        1. The licensing fees rule ................................................11

        2. The anti-trafficking law ..............................................11

        3. The one-handgun carry rule .......................................12

        4. The two-handgun listing rule .....................................12

        5. The authorization form rule and the handgun
           registration rule .........................................................13

## TABLE OF CONTENTS (cont'd)

**Page**

6.  The dealer reporting law ...............................................14

SUMMARY OF ARGUMENT AND STANDARD OF REVIEW .....14

ARGUMENT.....................................................................................19

THE DISTRICT COURT WAS RIGHT TO DISMISS
PLAINTIFFS' COMPLAINT ..................................................19

A. *The licensing fees rule*: Plaintiffs have not approached
rebutting the presumption of constitutionality that
attaches to the rule .........................................................23

B. *The anti-trafficking law*: Plaintiffs have not plausibly
alleged that every application restricts acquisition to the
point of infringing the keeping or bearing of arms for
self-defense....................................................................25

C. *The one-handgun carry rule*: plaintiffs have not
plausibly alleged that every application of the rule
impairs the people's means of self-defense .....................31

1.  Plaintiffs have failed to demonstrate that the text
enshrines an individual right to bear multiple
firearms for self-defense ...........................................32

2.  Plaintiffs have also failed to plausibly allege that the
rule infringes the right to bear arms for self-defense .35

D. *The two-handgun listing rule*: plaintiffs' challenge is
largely moot, and the piece seeking retrospective relief
fails on the merits ...........................................................38

1.  Plaintiffs cannot seek prospective relief in connection
with the repealed rule ................................................39

2.  Plaintiffs' claim for retrospective relief in connection
with the rule fails ......................................................41

ii

## TABLE OF CONTENTS (cont'd)

**Page**

E. *The authorization form rule and handgun registration rule*: plaintiffs lack standing to challenge the rule, and they have not plausibly alleged that every application is unlawful .......................................................................... 43

F. *The dealer reporting law*: plaintiffs lack standing to challenge this law too, and on the merits dealers' reporting obligations raise no Second Amendment question .......................................................................... 45

CONCLUSION .............................................................................. 47

CERTIFICATE OF COMPLIANCE ............................................... 48

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Freedom Def. Initiative v. Metro. Transp. Auth.*,
815 F.3d 105 (2d Cir. 2016) ........................................................... 40

*Antonyuk v. James*,
120 F.4th 941 (2d Cir. 2024), *cert. denied*, 2025 U.S.
Lexis 1384 (Apr. 7, 2025) ......................................................*passim*

*B & L Prods., Inc. v. Newsom*,
104 F.4th 108 (9th Cir. 2024), *cert. denied*, 2025 U.S.
Lexis 1692 (Apr. 28, 2025) ............................................................ 26

*Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*,
515 U.S. 687 (1995)........................................................................ 24

*Beckwith v. Frey*,
No. 1:24-cv-00384-LEW, 2025 U.S. Dist. LEXIS 25871
(D. Me. Feb. 13, 2025), *appeal pending*, No. 25-1160
(1st Cir.) ........................................................................................ 27

*Bianchi v. Brown*,
111 F.4th 438 (4th Cir. 2024), *cert. denied sub nom.*
*Snope v. Brown*, 2025 U.S. Lexis 2172 (June 2, 2025)............ 36, 38

*Calcano v. Swarovski N. Am. Ltd.*,
36 F.4th 68 (2d Cir. 2022) ............................................................. 25

*Coal. for Competitive Elec. v. Zibelman*,
906 F.3d 41 (2d Cir. 2018) ............................................................ 44

*District of Columbia v. Heller*,
554 U.S. 570 (2008)........................................................... 33, 34, 42

*Doherty v. Bice*,
101 F.4th 169 (2d Cir. 2024) ......................................................... 14

*Gamma Traders - I LLC v. Merrill Lynch Commodities,*
*Inc.*,
41 F.4th 71 (2d Cir. 2022) ............................................................. 24

*Gazzola v. Hochul*,
88 F.4th 186 (2d Cir. 2023), *cert. denied*, 144 S. Ct.
2659 (2024) ............................................................................... 26, 28

iv

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Granite State Outdoor Adver., Inc. v. Town of Orange*,
    303 F.3d 450 (2d Cir. 2002) ........................................... 40

*Hanson v. Smith*,
    120 F.4th 223 (D.C. Cir. 2024), *cert. denied sub nom.*
    *Hanson v. District of Columbia*, 2025 U.S. Lexis 2221
    (June 6, 2025) ................................................................ 37

*Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo*,
    981 F.2d 50 (2d Cir. 1992) ............................................. 40

*Jacoby & Meyers, LLP v. Presiding Justices of the First,
    Second, Third & Fourth Dep'ts*,
    852 F.3d 178 (2d Cir. 2017) ........................................... 22

*Kwong v. Bloomberg*,
    723 F.3d 160 (2d. Cir. 2013), *cert. denied*, 572 U.S.
    1149 (2014) ............................................................. 11, 25

*Lamar Adver. of Penn, LLC v. Town of Orchard Park*,
    356 F.3d 365 (2d Cir. 2004) ........................................... 39

*McRorey v. Garland*,
    99 F.4th 831 (5th Cir. 2024)................................. 26, 42, 44

*Md. Shall Issue, Inc. v. Moore*,
    116 F.4th 211 (4th Cir. 2024) (en banc), *cert. denied*,
    145 S. Ct. 1049 (2025).............................................*passim*

*Moreira v. Générale, S.A.*,
    125 F.4th 371 (2d Cir. 2025) ......................................... 14

*New York State Rifle & Pistol Association v. Bruen*,
    597 U.S. 1 (2022)....................................................*passim*

*Nguyen v. Bonta*,
    No. 24-2036, 2025 U.S. App. LEXIS 15220 (9th Cir.
    June 20, 2025) ................................................................ 30

*Oakland Tactical Supply, LLC v. Howell Twp.*,
    103 F.4th 1186 (6th Cir. 2024), *cert. denied*, 145 S. Ct.
    603 (2024) ....................................................... 21, 30, 33

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Ocean State Tactical, LLC v. Rhode Island*,
  95 F.4th 38 (1st Cir. 2024) *cert. denied*, 2025 U.S.
  LEXIS 2129 (June 2, 2025) .................................................... 36, 37

*Or. Firearms Fed'n v. Kotek*,
  682 F. Supp. 3d 874 (D. Or. 2023) ......................................... 34, 36

*Ritchie Capital Mgmt., L.L.C. v. GE Capital Corp.*,
  821 F.3d 349 (2d Cir. 2016) ........................................................ 44

*Rocky Mt. Gun Owners v. Polis*,
  121 F.4th 96 (10th Cir. 2024).................................................. 20, 33

*Tolbert v. Queens Coll.*,
  242 F.3d 58 (2d Cir. 2001) ...................................................... 40, 44

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)..................................................................... 43

*United States v. Gailes*,
  118 F.4th 822 (6th Cir. 2024)....................................................... 20

*United States v. Manney*,
  114 F.4th 1048 (9th Cir. 2024), *cert. denied*, 145 S. Ct.
  1151 (2025) .................................................................................. 20

*United States v. Rahimi*,
  602 U.S. 680 (2024)...............................................................*passim*

*United States v. Scheidt*,
  103 F.4th 1281 (7th Cir. 2024)..................................................... 20

*Uzuegbunam v. Preczewski*,
  592 U.S. 279 (2021)...................................................................... 41

*Vt. Fed'n of Sportsmen's Clubs v. Birmingham*,
  741 F. Supp. 3d 172 (D. Vt. 2024), *appeal pending*, No.
  24-2026 (2d Cir.) .................................................................... 29, 36

## Constitutional Provisions

U.S. Const. amend. II ..................................................... 19, 25, 27, 33

## Statutes, Rules, and Regulations

38 R.C.N.Y. § 5-01 ........................................................................ 3

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

38 R.C.N.Y. § 5-05 ................................................................ 4

38 R.C.N.Y. § 5-22 ...................................................... *passim*

38 R.C.N.Y. § 5-23 ............................................................ 32

38 R.C.N.Y. § 5-25 ...................................................... *passim*

Federal Rules of Civil Procedure 12(b) ................................ 9

N.Y. Penal Law § 265.00 .................................................... 3

N.Y. Penal Law § 265.01 .................................................... 3

N.Y. Penal Law § 265.02 .................................................... 3

N.Y. Penal Law § 265.03 .................................................... 3

N.Y. Penal Law § 265.04 .................................................... 3

N.Y. Penal Law § 265.20 .................................................... 3

N.Y. Penal Law § 400.00 .................................................... 3

N.Y.C. Admin. Code § 10-131 ................................... 3, 4, 23

N.Y.C. Admin. Code § 10-302.1 ...................................*passim*

N.Y.C. Local Law 31 of 2006 § 1 ....................................... 5

## Other Authorities

Daniel D. Slate, *Infringed*, 3 J. Am. Con. Hist. 381 (2025)................. 35

Joseph Blocher & Darrell A.H. Miller, *What is Gun Control? Direct Burdens, Incidental Burdens, and the Boundaries of the Second Amendment*, 83 U. Chi. L. Rev. 295, 334-35 (Winter 2016)..................................... 35

Joseph Blocher & Eric Ruben, *Originalism-by-Analogy and Second Amendment Adjudication,* 133 Yale L.J. 99, 153 (2023) ..................................................... 34

*NYPD License Division*, Instructions, *available at* https://licensing.nypdonline.org/app-instruction......................... 41

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*NYPD License Division*, New Application Instructions,
    https://perma.cc/W6WA-TFL2 ................................................ 4, 23

Paul M. Barrett, *Glock: The Rise of America's Gun* 17
    (2012) ................................................................................... 37

7 United States Encyclopedia of History 1297 (P. Oehser
    ed. 1967) ............................................................................... 34

4 William Blackstone, *Commentaries of the Laws of
    England* 184 (1769) ............................................................ 38

## PRELIMINARY STATEMENT

Three plaintiffs brought this action raising facial Second Amendment challenges to a host of New York City's firearms-related laws and regulations. The United States District Court for the Southern District of New York (Rakoff, J.) dismissed the action. This Court should affirm.

Plaintiffs launch a broadside on roughly half a dozen sets of laws and regulations, offering half-baked legal arguments and even less-developed factual allegations. As the district court found, some of plaintiffs' facial challenges never get off the ground because they are moot or plaintiffs do not have standing to pursue them. The remainder all fail at the first step of the two-step analysis laid out in *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022), because plaintiffs have not plausibly alleged that every application of the challenged laws and regulations infringes the right to keep and bear arms for self-defense.

Though plaintiffs' scattershot complaint attacks numerous local laws and regulations, there are three core claims. First, plaintiffs challenge the licensing fees required to obtain a handgun license, claiming that the Second Amendment categorically prohibits charging *any* fees. But *Bruen* itself rejects that categorical claim.

Second, plaintiffs challenge an anti-trafficking law that guards against the widespread problem of straw purchasing by preventing

someone from acquiring a handgun if they have already acquired one in the past 90 days. But plaintiffs fail to acknowledge that this law does not directly implicate the Second Amendment's text, because it regulates the acquisition of firearms, not keeping or bearing them. While that does not insulate the law from constitutional scrutiny, it does require plaintiffs to plausibly allege that every application of the law restricts firearm acquisition to such a degree that it infringes the right to keep and bear arms for self-defense. Plaintiffs' allegations fall woefully short.

Third, plaintiffs challenge a rule that allows holders of a "carry" license to carry only one concealed handgun in public at a given time. Here too, plaintiffs have not plausibly alleged that every application of the rule would infringe the right to keep and bear arms for self-defense, where at least some applications of the rule would secure a means of self-defense by allowing a person to carry an extremely reliable, multiple-round handgun in case of confrontation.

Ultimately, the district court correctly dismissed these and plaintiffs' other vaguely alleged claims at the pleading stage on either mootness grounds, for lack of standing, or for failure to state a claim. This Court should affirm.

2

## ISSUE PRESENTED

Did the district court correctly conclude that some of plaintiffs' claims fail on mootness or standing grounds and that the rest fail to adequately allege that the challenged laws are facially unconstitutional?

## STATEMENT OF THE CASE

### A.  Handgun licensing, acquisition, and carrying in New York City, and this action raising facial challenges to several laws and regulations

In New York, state law establishes the framework for obtaining the handgun license that is required to lawfully possess a handgun. *See generally* N.Y. Penal Law §§ 265.01-265.04, 265.20(a)(3), 400.00. There are two main types of handgun licenses: (1) a "premises" license authorizes the holder to possess a handgun in their home or place of business, with limited exceptions, *id.* § 400.00(2)(a), (b); and (2) a "carry" license authorizes the holder to carry a concealed handgun in public, where allowed, *id.* § 400.00(2)(c)–(f); *see also* 38 R.C.N.Y. § 5-01 (City regulations adopting similar classifications).

Local officers—in New York City, the Police Commissioner—are responsible for handgun licensing. N.Y. Penal Law §§ 265.00(10), 400.00(1); N.Y.C. Admin. Code § 10-131(a)(1). The Police Commissioner has adopted regulations implementing her authority, *see* 38

3

R.C.N.Y. § 5-01 *et seq*., and she has delegated day-to-day licensing responsibility to the NYPD's License Division, *id*. § 5-05.

Plaintiffs are two residents of New York City (Charles Mills and Braden Holliday) and one non-City resident of New York State (Craig Sotomayor) (Joint Appendix ("JA") 7). In their complaint, plaintiffs claim that several sets of City laws and regulations violate the Second Amendment in all their applications and are thus facially unconstitutional. The complaint seeks a declaration that these laws and regulations are unconstitutional across the board, and a permanent injunction "stri[king]" them (JA25-26). Plaintiffs also seek nominal damages and "[g]arden variety compensatory damages" (JA26).

### 1.   The licensing fees rule

To obtain a handgun license, an applicant must register with the NYPD License Division, completing an online application. *See NYPD License Division*, New Application Instructions ("New Application Instructions"), https://perma.cc/W6WA-TFL2. The fee is $340 for a three-year license. N.Y.C. Admin. Code § 10-131(a)(3). The fingerprinting fee is $88.25. *See* New Application Instructions ¶ 3.

Plaintiffs claim that "[r]equiring that an individual pay a fee to the government before they can exercise the right to possess and/or carry weapons in common use is repugnant to the plain text of the Second

4

Amendment" (JA12 ¶ 31). One plaintiff, Holliday, alleges that he "stopped [his] application" when he discovered that the fees were "over $400" (JA17 ¶¶ 66-67). While Holliday asserts that he "cannot afford" the fees (JA17-18 ¶¶ 67-68), he alleges that he would have applied for a license only if there were "no fee" whatsoever (JA18 ¶ 70). Consistent with that categorical view, the complaint seeks a declaration that the City can never "requir[e] individuals to pay money to the government for permission to possess and carry firearms" (JA26).

### 2.   The anti-trafficking law

"Straw purchasing" involves one person acquiring firearms—often multiple firearms at once—and then illegally distributing them to others. According to the federal government "more than half of the guns identified in urban trafficking investigations that involved juveniles had been trafficked by straw purchases or straw purchasing rings." N.Y.C. Local Law 31 of 2006 § 1 (citing federal study).

To address this widespread problem, the City "limit[s] multiple and closely consecutive purchases of handguns." *Id.* A person cannot acquire a firearm if they have already acquired one within the past 90 days, N.Y.C. Admin. Code § 10-302.1(b), with various exceptions, including ones covering lost or stolen firearms, *id.* § 10-302.1(g)(v). The same 90-day period applies to the acquisition of rifles and shotguns, but a person

5

may acquire both a single handgun and a single rifle or shotgun within the same 90-day period. *Id.* § 10-302.1(a)-(b).[1]

Mills—who already has at least three handguns and one rifle or shotgun (JA19-20)—alleges that he would have purchased an additional handgun if not for the law (JA20-21 ¶¶ 85-86, 89-90).

### 3.   The one-handgun carry rule

Holders of a carry license can list multiple handguns on their license and choose among them when carrying a concealed handgun in public (*see infra* at 7). But they can only publicly carry one concealed handgun at a given time. 38 R.C.N.Y. §§ 5-25(g)(3), 5-22(a)(7).

Sotomayor, the non-City resident, alleges that he has both a State- and City-issued carry license and that he has an "impressive and sizeable handgun collection" (JA22-23 ¶¶ 100-02). He claims that he regularly carries two handguns "when outside of the City," and that "[w]ith the rise of violent criminal activity in the City" he wants to "carry a primary handgun" as well as a backup handgun (JA23-24 ¶¶ 105-07). A second plaintiff, Mills, complains that he cannot "carry[] more than one hand-gun at a time" (JA22 ¶ 95).

---

[1] A parallel anti-trafficking law applies to dealers. Dealers cannot sell a handgun (or a rifle or shotgun) to a person they have reason to believe has acquired a weapon in the same category in the past 90 days. N.Y.C. Admin. Code § 10-302.1(a).

### 4. The repealed two-handgun listing rule

A license holder "is authorized to own only the handgun(s) that are listed on their license." 38 R.C.N.Y. § 5-22(a)(8). When this action was brought, a carry license holder could list only two handguns, 38 R.C.N.Y. § 5-25(d)(4) (2023), and the License Division had "discretion" to reduce that number to one "when the licensee's needs [did] not require possession of two handguns," *id.* § 5-25(d)(4)(i) (2023).

In 2024, the NYPD repealed that rule and adopted a new one that essentially allows carry license holders to list an unlimited number of handguns on their license. A license holder can now apply to list more than two handguns on a license, and the License Division has no discretion to limit the number. 38 R.C.N.Y. § 5-25(g)(3) (2025). Instead, "additional handguns [beyond two] will be approved upon request after the licensee shows evidence of appropriate safeguarding" and compliance with other objective criteria. *Id.* § 5-25(g)(1), (3).

Two plaintiffs—Mills and Sotomayor—challenge the repealed rule (JA22 ¶ 93; JA23 ¶ 104). Mills, for example, claims that the rule "restricted" him by limiting his ability to "decide for himself which of his handguns to carry on any particular day," since at that time only two could be listed on a carry license (JA21-22 ¶¶ 92-93).

7

**5. The authorization form rule and the handgun registration rule**

To take possession of a handgun, a license holder must obtain written authorization from the License Division. 38 R.C.N.Y. §§ 5-25(c). 5-22(a)(9). That involves submitting a request, *id.* § 5-22(a)(10), obtaining a purchase authorization form, *id.* and then providing the form to the dealer at the time of purchase, *id.* § 5-25(c).

Mills claims that he was unable to obtain a purchase authorization form, but only because the anti-trafficking law prevented him from purchasing an additional handgun at the time (JA20-21 ¶¶ 85-86, 89-90). While the complaint also purports to challenge 38 R.C.N.Y. § 5-22(a)(8)-(10) (JA26), the allegations only address the portions of 38 R.C.N.Y. § 5-25(a) and (c) that require a purchase authorization form.

To take possession of a handgun, a license holder must submit the handgun for inspection and have it entered on the license. 38 R.C.N.Y. § 5-25(d). This entails submitting a bill of sale, a purchase authorization form completed by the firearms dealer, a photo of the handgun, a photo of a safety locking device, and proof of ownership of a safe storage container. *Id.* § 5-25(d)(1)-(6). Today, nearly all inspections are conducted remotely through a review of submitted materials. While the complaint broadly alleges that "[f]irearm registration requirements are

8

inconsistent with the plain text of the Second Amendment" and the nation's history of firearm regulation (JA14 ¶ 46), the complaint does not specifically allege any facts explaining how the inspection requirements could have impacted plaintiffs' rights.

### 6.   The dealer reporting law

Dealers are subject to law-enforcement reporting obligations and related record-keeping and compliance requirements in connection with the City's anti-trafficking law. N.Y.C. Admin. Code § 10-302.1(c)-(e). Plaintiffs purport to seek a declaration that these laws, along with the anti-trafficking laws at § 10-302.1(a)-(b), violate the Second Amendment (JA26), but they make no allegations whatsoever about how the dealer reporting requirements impact them.

### B.   The district court's dismissal of the action

The City moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (JA27(a)). The City raised standing and mootness arguments and also contended that each of plaintiffs' claims failed under step one of the *Bruen* inquiry (Def.'s Mem. of Law in Support of Mot. to Dismiss, No. 23-cv-07460-JSR, ECF No. 15). That step requires a plaintiff to allege a deprivation of rights protected by "the plain text of the Second Amendment." *Bruen*, 597 U.S. at 32. The City reserved the

right, if needed, to make *Bruen* step two arguments following discovery (Def.'s Mem. of Law at 25 n.16).

While the motion was pending, the City repealed the two-handgun listing rule found at 38 R.C.N.Y. § 5-25 (2023), which allowed carry license holders to list no more than two handguns on a license. The replacement regulation effectively entitles carry license holders to list an unlimited number of handguns on their carry licenses upon compliance with objective criteria. *See* 38 R.C.N.Y. § 5-25(g)(3) (2025). The City informed the district court of this change, attaching the relevant portions of the City Record (JA28-34). The City argued that the change mooted plaintiffs' challenge to the repealed rule (JA30).

The district court dismissed the action (JA37, 39-66). The court rejected plaintiffs' assertion that it should proceed directly to *Bruen* step two because the challenged regulations all purportedly "impact and implicate [plaintiffs'] right to keep and bear firearms" (JA57). Such an approach, the court noted, "would essentially eliminate the step-one analysis whenever a regulation has the slightest connection to guns" (*id.*). The court observed that *Bruen* itself recognized that "shall-issue" licensing regimes "do *not* infringe" on Second Amendment rights so long as they allow protected persons to keep and bear arms and are not applied in practice to frustrate that right (JA59 (emphasis in original)).

After explaining why each claim failed for jurisdictional reasons, on the merits of *Bruen* step one, or both, the court then briefly addressed step two sua sponte, asking whether the challenged regulations are "'consistent with the Nation's historical tradition of firearm regulation'" (JA56 (quoting *Bruen*, 597 U.S. at 24)). Under step two, the district court held, "plaintiffs' claim would likely fail" (JA65).

For each challenged rule, the court held as follows.

### 1.   The licensing fees rule

The district court recognized that this Court had already upheld the constitutionality of the $340 licensing fees in *Kwong v. Bloomberg*, 723 F.3d 160 (2d. Cir. 2013), *cert. denied*, 572 U.S. 1149 (2014), and that *Bruen* specifically contemplates licensing fees as long as they are not so exorbitant as to deny the right to keep and bear arms (JA64). The court concluded that the claim failed because plaintiffs had not alleged that the fees here were exorbitant and instead maintained that *any* fee violated the Second Amendment (JA64-65).

### 2.   The anti-trafficking law

The district court found that plaintiffs have standing to challenge the anti-trafficking law, including the parallel dealer law (JA52). But on the merits, the court applied *Bruen* step one and found that "nothing in

the text of the Second Amendment suggests that plaintiffs have a right to immediately obtain firearms 'on demand'" (JA60). The court noted that plaintiffs did not offer specific factual allegations that the 90-day period governing acquisitions of additional handguns was "so lengthy" as to infringe their right to keep and bear arms (*id.*).

### 3. The one-handgun carry rule

Applying *Bruen* step one, the district court found that the one-handgun carry rule did not "infringe" or "hinder" plaintiffs' ability to defend themselves because the rule still allows carry license holders to carry a single handgun for that purpose (JA62). The court noted that plaintiffs had failed to allege that carrying only a single handgun impeded their ability to defend themselves (*id.*).

### 4. The two-handgun listing rule

Considering the repeal of the rule that limited carry licenses to two handguns and gave the License Division discretion to limit the number to one, the district court determined that plaintiffs' claims for forward-looking declaratory and injunctive relief were moot (JA45-46). But the court concluded that plaintiffs' claims seeking "retrospective actual or nominal damages" were not moot (JA46-47). However, the court found that only Mills has standing to seek such retrospective relief because

only he alleged that the rule "restricted his purported right to a weapon of choice without any temporal restraints" (JA53-54).

On the merits, the court found that, at *Bruen* step one, the text of the Second Amendment does not protect a "preference" to list more than two handguns on a carry license "without any temporal restrictions" (JA63). The court held that any "administrative burden" that may have been required to add and remove additional guns from a carry license "does not infringe on Second Amendment rights" (*id.*).

### 5. The authorization form rule and the handgun registration rule

The district court found that plaintiffs lack standing to challenge the rule requiring a license holder to obtain authorization from the License Division before acquiring a handgun (JA49-50). The court noted that Mills and Sotomayor already had firearms and were able to purchase more (JA50), and that neither alleged that the License Division "refused to issue a purchase authorization" (*id.*). For his part, Holliday alleged that it was the existence of licensing fees that prevented him from obtaining a license and firearm, not the authorization requirement (JA49). The court therefore concluded that plaintiffs had not "alleged any cognizable injury traceable to the purchase authorization rule" (*id.*). The court also concluded that plaintiffs' "cursory" allegations regarding

13

the handgun registration rule failed to establish standing because plain-
tiffs "do not allege that the mere act of registering" their firearms injured
them or "deprived" them of their right to keep or bear arms (JA50).

### 6. The dealer reporting law

The district court held that plaintiffs lack standing to challenge re-
porting and other administrative requirements that apply to firearms
dealers, not purchasers (JA51). Plaintiffs simply failed to allege any in-
jury to them traceable to those requirements (*id.*).

## SUMMARY OF ARGUMENT
## AND STANDARD OF REVIEW

On de novo review, this Court should affirm. *See Doherty v. Bice*,
101 F.4th 169, 172 (2d Cir. 2024) (de novo review for mootness and
standing determinations); *Moreira v. Générale, S.A.*, 125 F.4th 371,
387 (2d Cir. 2025) (same for failure to state a claim).

At step one of *Bruen*'s two-step analysis, plaintiffs bear the burden
of plausibly alleging that the challenged laws and regulations implicate
the plain text of the Second Amendment by infringing the right to keep
and bear arms for self-defense. And because plaintiffs raise pre-enforce-
ment facial challenges and seek an order striking down the challenged
laws and regulations in their entirety, they must show that there are no

set of circumstances in which the laws and regulations would be valid. Plaintiffs have failed to satisfy this heavy burden.

*The licensing fees rule.* Plaintiffs' challenge to the City's licensing fees—a $340 baseline fee and $88.25 fingerprinting fee—is categorical, contending that the government cannot charge *any* fee for licensing. That contention is irreconcilable with *Bruen* itself, which went out of its way to underscore that licensing fees are presumptively constitutional and do not implicate the Second Amendment unless they are so exorbitant as to infringe the right to keep and bear arms for self-defense. Plaintiffs have not even tried to marshal allegations indicating that every application of the licensing fees rule would have such a result.

*The anti-trafficking law.* The anti-trafficking law guards against straw purchasing by preventing someone from acquiring a handgun if they have already acquired one in the past 90 days. Because the law governs the acquisition of firearms, not keeping or bearing them, it does not directly implicate the text of the Second Amendment. And plaintiffs have not plausibly alleged that the law restricts acquisition to the degree that every application would effectively infringe the right to keep and bear arms for self-defense. The law would constitutionally apply, for example, to someone who has purchased a handgun to add to an already sizeable collection, especially where that person could go out the

15

next day and buy a shotgun or a rifle, and over the course of each year could acquire a total of four additional handguns and four additional rifles or shotguns.

*The one-handgun carry rule.* Plaintiffs have also failed to allege that every application of the rule that permits carry license holders to carry only one concealed handgun in public would infringe the right to keep or bear arms for self-defense. The rule would constitutionally apply, for example, to someone who carries an extremely reliable and multi-round handgun for self-defense and who wants to—but cannot— also carry a competitive shooting handgun on their person en route to a recreational shooting competition. More broadly, given the state of modern handgun technology and the fact that few shots are ever fired in confrontations involving self-defense, plaintiffs have not plausibly alleged that the text of the Second Amendment requires more than one handgun to be carried publicly on one's person to secure a means of self-defense.

*The two-handgun listing rule.* Plaintiffs' challenge to a repealed rule that limited the number of handguns that could be listed on a carry license to two is moot insofar as it seeks prospective relief. And plaintiffs' claim for retrospective relief fails, where the text of the Second Amendment does not confer a right to choose on a daily or hourly basis

16

which of three or more handguns to carry in public. The former rule allowed license holders to continuously swap in different handguns on their license, and requiring them to take administrative steps to achieve that end hardly imposed a meaningful constraint on every license holder's means of self-defense.

*The authorization form rule and the handgun registration rule.* Plaintiffs lack standing to challenge the rule requiring a prospective handgun purchaser to obtain a purchase authorization form or the rule requiring purchasers to register handguns on a license. Plaintiffs have abandoned any contrary argument on appeal, failing to grapple with the district court's claim-specific standing rulings and instead impermissibly arguing that they have standing in gross. In any case, both challenges fail on the merits: the rules are cut from the same cloth as the non-discretionary and non-abusive regulations that comprise a "shall issue" licensing regime, which *Bruen* deems constitutional.

*The dealer reporting law.* Plaintiffs have abandoned any challenge to the reporting and other compliance requirements that apply to firearms dealers, and for good reason. Plaintiffs, as gun owners and prospective purchasers, have failed to establish that they have standing to challenge administrative requirements governing dealers. And there is

17

no plausible argument that dealers' administrative obligations infringe the right to keep and bear arms for self-defense.

All of plaintiffs' claims therefore fail at *Bruen* step one—with the constitutional text—or on mootness or standing grounds. This Court should therefore affirm the judgment dismissing the action.

But should this Court disagree and conclude that any of plaintiffs' claims get past *Bruen* step one, the Court should then remand for the parties to address step two. The City confined its motion to dismiss to step one, and reserved the right to address step two at a later stage of the proceedings should any claim survive. And while the court below offered comments about how step two would "likely" play out, it appropriately offered no definitive ruling on the point. In the event that this Court does not regard step one as conclusive on certain of plaintiffs' claims, remand would be appropriate to allow the parties to marshal historical materials addressing the relevant claim or claims, and to submit full briefing on that score, as well as to allow the district court to provide a full analysis of those issues.

18

## ARGUMENT

### THE DISTRICT COURT WAS RIGHT TO DISMISS PLAINTIFFS' COMPLAINT

Plaintiffs contend that a variety of local laws and regulations concerning handguns violate the Second Amendment in all their applications and are thus facially invalid. While some of plaintiffs' claims fail on mootness or standing grounds, all of them are without merit. So we begin by articulating the legal framework governing the merits.

The Second Amendment states that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. Under *Bruen*'s two-step analysis, a court first evaluates whether "the Second Amendment's plain text covers [the relevant] conduct." *Bruen*, 597 U.S. at 17. This "threshold inquiry requires courts to consider three issues: whether the conduct at issue is protected, whether the weapon concerned is in common use, and whether the affected individuals are ordinary, law-abiding, adult citizens and thus part of the people whom the Second Amendment protects." *Antonyuk v. James*, 120 F.4th 941, 981 (2d Cir. 2024) (cleaned up[2]), *cert. denied*, 2025 U.S. Lexis 1384

---

[2] This brief uses "cleaned up" to indicate that internal quotation marks, alterations, and citations have been omitted from quotations.

(Apr. 7, 2025). If the answer to all three questions is yes, then "the Constitution presumptively protects that conduct" and the burden shifts to the government, at step two, to "demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17; *see also Antonyuk*, 120 F.4th at 964.

At *Bruen* step one, a plaintiff "has the burden of establishing that 'the Second Amendment's plain text covers'" the conduct at issue. *Rocky Mt. Gun Owners v. Polis*, 121 F.4th 96, 113 (10th Cir. 2024) (quoting *Bruen*, 597 U.S. at 17); *see also United States v. Gailes*, 118 F.4th 822, 825 (6th Cir. 2024) (noting that only after step one is satisfied does the "burden shift[]" to the government). The plaintiff may not define the conduct at issue at "such a high level of generality" that "every requirement making it slightly more difficult to possess a firearm demands a full historical inquiry into its origin." *United States v. Manney*, 114 F.4th 1048, 1052 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1151 (2025).

To get past *Bruen* step one, therefore, a plaintiff must plausibly allege that the challenged regulations actually "infringe[]" the right to "keep and bear" arms. *See United States v. Scheidt*, 103 F.4th 1281, 1284 (7th Cir. 2024) (rejecting challenge at *Bruen* step one where law did not "infringe" protected right); *Md. Shall Issue, Inc. v. Moore*, 116 F.4th 211, 220 (4th Cir. 2024) (en banc) ("[A] regulation falls within the

20

ambit of the Second Amendment only if the regulation 'infringes' the Second Amendment right to keep and bear arms."), *cert. denied*, 145 S. Ct. 1049 (2025); *see also Oakland Tactical Supply, LLC v. Howell Twp.*, 103 F.4th 1186, 1196 (6th Cir. 2024) ("[W]hen applying *Bruen* we must ask not simply whether the regulation affects firearms in some way."), *cert. denied*, 145 S. Ct. 603 (2024).

Consistent with this understanding, *Bruen* itself made clear that "shall-issue" licensing regimes "ordinarily do not prevent law-abiding individuals from exercising their Second Amendment rights," even though such regimes—by their nature—impose some burdens on keeping and bearing arms. *Md. Shall Issue*, 116 F.4th at 221 (citing *Bruen*, 597 U.S. at 38 n.9). Licensing regimes—like New York City's—that "contain only narrow, objective, and definite standards guiding" licensing officials' efforts to ensure that only "law-abiding, responsible citizens" bear arms do not run afoul of the Second Amendment unless the "permitting scheme [is] put toward abusive ends," such as where "lengthy wait times in processing license applications or exorbitant fees" effectively "deny ordinary citizens their right to public carry." *Bruen*, 597 U.S. at 38 n.9 (cleaned up); *see also id.* at 80 (Kavanaugh, J., concurring) ("[S]hall-issue licensing regimes are constitutionally permissible,

21

subject of course to an as-applied challenge if a shall-issue licensing regime does not operate in that manner in practice.").

One final point before we turn to the specific claims here: plaintiffs bear an especially heavy burden in this case. Because "plaintiffs pursue this pre-enforcement appeal before they have been charged with any violation of law, it constitutes a facial, rather than as-applied challenge." *Jacoby & Meyers, LLP v. Presiding Justices of the First, Second, Third & Fourth Dep'ts*, 852 F.3d 178, 184 (2d Cir. 2017) (cleaned up); *see also Antonyuk*, 120 F.4th at 982. Facial challenges are "the most difficult challenge to mount successfully" because a challenger must show that "no set of circumstances exists under which the [law or regulation] would be valid." *United States v. Rahimi*, 602 U.S. 680, 693 (2024) (cleaned up). To reject a facial challenge, all it takes is "one set of circumstances" in which the application of a challenged regulation would be valid. *Antonyuk*, 120 F.4th at 1047. And plaintiffs have not come close to plausibly alleging that every application of the challenged laws and regulations would violate the Second Amendment.

**A.** ***The licensing fees rule*: Plaintiffs have not approached rebutting the presumption of constitutionality that attaches to the rule.**

For a three-year handgun license, an applicant must pay a $340 baseline fee and an $88.25 fingerprinting fee, for a total of $428.25. *See* N.Y.C. Admin. Code § 10-131(a)(3); New Application Instructions ¶ 3. Plaintiffs' challenge to the rule is categorical. They contend that it is flatly unconstitutional to "requir[e] that an individual pay a fee to the government before they can exercise the right to possess and/or carry weapons in common use" (JA12 ¶ 31). Plaintiffs thus seek a correspondingly sweeping declaration that the City cannot—under any circumstances—"requir[e] individuals to pay money to the government for permission to possess and carry firearms" (JA26).

Plaintiffs' contention that the Second Amendment does not permit *any* licensing fees is refuted by *Bruen* itself. There, the Supreme Court was explicit that licensing fees are constitutionally permissible unless they are so "exorbitant" than they effectively "deny ordinary citizens their right to public carry." *Bruen*, 597 U.S. at 38 n.9. Indeed, such fees are "presumptively constitutional" under *Bruen* step one. *See Md. Shall Issue*, 116 F.4th at 222; *Antonyuk*, 120 F.4th at 985 n.32. Plaintiffs' claim that the Second Amendment requires firearm licensing to be free fails right there, without the need for further analysis.

23

Plaintiffs try to pivot on appeal, suggesting in their brief that they are challenging "exorbitant licensing fees" (Appellants' Brief ("App. Br.") 23-24). But the complaint does not use the word "exorbitant" or any synonym, even in conclusory terms. Nor does it offer specific factual allegations indicating that the City's licensing fees are so exorbitant that "in every circumstance," *Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687, 699 (1995), they "deny ordinary citizens their right to public carry," *Bruen*, 597 U.S. at 38 n.9; *see also Gamma Traders - I LLC v. Merrill Lynch Commodities, Inc.*, 41 F.4th 71, 80 (2d Cir. 2022) ("[T]he law is clear that a party may not amend pleadings through a brief.") (cleaned up). If anything, the complaint itself tells us the exact opposite, confirming that for two of three plaintiffs—Mills and Sotomayor—the fees were not cost-prohibitive (JA19-20, 22-23).

To be sure, Holliday claims that he "cannot afford" the licensing fees (JA18). But he alleges that he would seek a handgun license only "[i]f there was *no* fee" (JA18 ¶ 70 (emphasis added)). That is not a claim that the licensing fees are exorbitant; it is just a variation on plaintiffs' categorical contention that requiring any fee is "patently unconstitutional" (JA18 ¶ 72). That contention is irreconcilable with *Bruen*.

In any case, this Court has already considered whether the City's licensing fees are exorbitant and answered that question in the negative.

24

In *Kwong*, the Court upheld the $340 figure for licensing fees—or more than $465 in today's dollars—against a Second Amendment challenge. *Kwong*, 723 F.3d at 165-68. While *Kwong* predates *Bruen*, the conclusion that the licensing fees were not exorbitant remains sound.

**B. *The anti-trafficking law*: Plaintiffs have not plausibly alleged that every application restricts acquisition to the point of infringing the keeping or bearing of arms for self-defense.**

To prevent straw purchasing, the anti-trafficking law provides that a person cannot acquire an additional handgun if they have acquired one within the past 90 days.[3] N.Y.C. Admin. Code § 10-302.1(b). Plaintiffs' challenge to this law likewise fails at *Bruen* step one.

The Second Amendment "secures for Americans a means of self-defense," *Rahimi*, 602 U.S. at 690, by proscribing "infringe[ments]" on the right to "keep and bear arms," U.S. Const. amend. II. The plain text protects the right to possess and carry a firearm. And the anti-trafficking

---

[3] Plaintiffs seem to believe that the anti-trafficking law applies when someone already has a handgun and seeks to transfer it from one type of license to another—from a premises license to a carry license or vice versa (JA16 ¶ 58). That just misapprehends the law, which applies when someone seeks to acquire an additional handgun. N.Y.C. Admin. Code § 10-302.1(a), (b). Plaintiffs' belief—along with Mills' accompanying assertion that after he transferred one handgun from one license to another he was "forced to wait" 90 days to do it again (JA20-21 ¶¶ 86-87)—are incorrect legal conclusions that should be disregarded. *See Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022). Mistaken assumptions about a hypothetical subset of applications do not add up to a viable facial challenge in any event.

law regulates neither of these things; it is instead directed at firearm acquisition—or, on the other side of the transaction, their sale.

To be sure, acquisition is one of the "ancillary rights" that call for protection when it is "necessary to the realization of the core right to possess a firearm for self-defense." *Gazzola v. Hochul*, 88 F.4th 186, 197 (2d Cir. 2023) (cleaned up), *cert. denied*, 144 S. Ct. 2659 (2024). But the acquisition of firearms is one step removed from the constitutional text. So while "[t]he right to 'keep and bear' can implicate the right to purchase ... such an implication is not the same thing as being covered by the plain text of the amendment." *McRorey v. Garland*, 99 F.4th 831, 838 (5th Cir. 2024).

To honor the text, courts have recognized an additional threshold burden on a plaintiff challenging a firearm acquisition regulation. Courts have sometimes asked whether the plaintiff has shown the restriction is tantamount to a "functional prohibition[]" on the right to keep and bear arms. *Id.* (citing *Bruen*, 597 U.S. at 38 n.9). Other times, courts have asked whether the plaintiff has shown that the regulation "meaningfully constrain[s]" firearm acquisition. *Gazzola*, 88 F.4th at 197; *see also B & L Prods., Inc. v. Newsom*, 104 F.4th 108, 119 (9th Cir. 2024) ("[R]equiring that a regulation meaningfully constrain the right to keep and bear arms for the purpose of self-defense faithfully tracks

the Second Amendment's plain text") (cleaned up), *cert. denied*, 2025 U.S. Lexis 1692 (Apr. 28, 2025). The key point is that an indirect constraint on acquisition must itself rise to the level of an "infringe[ment]" of the right to "keep" or "bear" arms. U.S. Const. amend. II. And under any conceivable rubric, plaintiffs have failed to plausibly allege that every application of the anti-trafficking law infringes the right to keep and bear arms.

Plaintiffs' argument on appeal rests on the mistaken premise that the Second Amendment is "unqualified" and therefore any regulation of firearms demands a step-two analysis (App. Br. 19). And plaintiffs cite a District of Maine decision that makes a similar mistake, finding that a waiting-period law was likely unconstitutional even where the "curtailment" was only "modest" (App. Br. 20, citing *Beckwith v. Frey*, No. 1:24-cv-00384-LEW, 2025 U.S. Dist. LEXIS 25871, at *7 (D. Me. Feb. 13, 2025), *appeal pending*, No. 25-1160 (1st Cir.)).

Plaintiffs' mistaken assumption about the scope of the Second Amendment right is perhaps why plaintiffs have never even tried to allege that all applications of the anti-trafficking law rise to the level of infringing the keeping and bearing of arms. Indeed, one need not look past plaintiffs themselves to find examples of constitutional applications of the law. Take Mills, who has been able to acquire at least three

27

firearms consistent with the City's laws and regulations (JA19-21). No more is required to safeguard the "core right to possess a firearm for self-defense." *Gazzola*, 88 F.4th at 197 (cleaned up). So even assuming that applying the anti-trafficking law meant that Mills had to wait 90 days before obtaining an additional firearm, that would not be an unconstitutional application of the rule.

It is easy to imagine other applications of the law that would also be constitutional. Consider someone—like Sotomayor—who already has "an impressive and sizeable handgun collection" (JA23).[4] If that person bought another handgun today, nothing would prohibit him from also buying a shotgun or a rifle within the next 90 days (*see supra* at 5-6). And after 90 days, he could buy another handgun. Each year, he could acquire four handguns and four shotguns or rifles; over the course of a decade, he could add 40 handguns and 40 shotguns or rifles to an already sizeable collection. This is not someone who has been denied "a means of self-defense" at any point. *Rahimi*, 602 U.S. at 690. Indeed, the City's laws and regulations have not prevented two of the plaintiffs here from accomplishing what *amicus curiae* suggest should be allowed: "buy[ing] one gun effective for home defense, and a different

---

[4] Sotomayor, who does not live in the City, presumably buys firearms elsewhere.

28

gun" that a person "can safely and comfortably carry on her person or in her car" (Br. for National Shooting Sports Foundation, Inc. 7-8).

Stepping back, the anti-trafficking law is not a bar on the acquisition of firearms; it is not a bar on keeping or bearing firearms; and it is not a bar on where firearms can be carried. It simply regulates the pace of additional firearm acquisitions by requiring someone who has just acquired a handgun—and may already have many more—to wait 90 days before purchasing an additional one. The law is "designed to ensure" that "law-abiding, responsible citizens," rather than straw purchasers, are the ones actually purchasing multiple firearms. *Bruen*, 597 U.S. at 38 n.9 (cleaned up). The law turns on an objective criterion—the passage of time—and does not require a successive purchaser to make any showing of "special need" or the like. Under these circumstances, plaintiffs must offer specific factual allegations that the law is "put toward abusive ends." *Id.*; *see also Vt. Fed'n of Sportsmen's Clubs v. Birmingham*, 741 F. Supp. 3d 172, 210 (D. Vt. 2024) (describing Vermont's waiting-period law as "perhaps the best version of a shall-issue licensing regime post-

*Bruen* because it imposes *no* administrative discretion"), *appeal pending*, No. 24-2026 (2d Cir.). They have not done so.[5]

The anti-trafficking law does not infringe the right of ordinary, law-abiding citizens to "own and bear arms in case of confrontation," *Oakland Tactical Supply*, 103 F.4th at 1196—not as a general matter, and certainly not in all its applications. Presented with plaintiffs' facial challenge, this Court need not ask whether some applications of the law warrant closer scrutiny. The only question here is whether the law "has *any* lawful scope." *Rahimi*, 602 U.S. at 713 (Gorsuch, J. concurring) (emphasis in original). It plainly does.

---

[5] Three days before the filing of this brief, a panel of the Ninth Circuit affirmed a ruling finding that California's one-gun-a-month anti-trafficking law violated the Second Amendment. *See Nguyen v. Bonta*, No. 24-2036, 2025 U.S. App. LEXIS 15220 (9th Cir. June 20, 2025). Although the plaintiffs there raised a facial challenge (*id*. at \*6), the court appears not to have considered whether the challenged law would be unconstitutional in every set of circumstances. The court did not address, for instance, whether the law could constitutionally be applied to a person who already owned so many firearms—500, hypothetically—that having to wait a month to buy one more could never meaningfully constrain that person's ability to keep or bear arms for self-defense. Moreover, in concluding that the law failed to serve a "presumptively valid purpose," the court believed that "delay *itself* is the purpose" of California's law (*id*. at \*11 (emphasis in original)). Not so here. Whatever purpose the *Nguyen* court gleaned from the challenged law, there is no real dispute that the purpose of New York City's anti-trafficking law is to prevent the illegal resale of guns to people unqualified to own them; delay in the pace of acquisition of additional firearms is merely the method of achieving this important public safety end.

**C.** *The one-handgun carry rule*: **plaintiffs have not plausibly alleged that every application of the rule impairs the people's means of self-defense.**

Under the one-handgun carry rule, the holder of a carry license can carry—or "bear"—no more than one concealed and loaded handgun in public. 38 R.C.N.Y. §§ 5-25(g)(3), 5-22(a)(7). Compared to the anti-trafficking law, this rule is closer to the text of the Second Amendment: it undeniably regulates how people can "bear" firearms. But plaintiffs' challenge to the one-handgun carry rule still fails at *Bruen* step one—on the constitutional text—because plaintiffs have not plausibly alleged that the rule actually "infringe[s]" the right to bear arms as "a means of self-defense." *Rahimi*, 602 U.S. at 690.[6]

Plaintiffs' facial challenge to the one-handgun carry rule can easily be resolved by looking to circumstances where the rule is "most likely to be constitutional." *Rahimi*, 602 U.S. at 701. Consider someone who regularly carries an exceptionally reliable handgun like the Glock 19, with

---

[6] Plaintiffs barely address the district court's reasoning as to this claim, and the little they do say is riddled with error (App. Br. 21). For example, plaintiffs mistake the district court's recitation of a conclusory assertion in the complaint (JA39) with an "initial conclusion that the City's regulations 'restrict conduct protected by the Second Amendment'" (App. Br. 21 (misquoting JA39); *see also* App. Br. 15 (misquoting same)). Plaintiffs' *amicus* misreads the decision too, asserting that the "court did not dispute that the 'regulations at issue apply to conduct that falls within the activities governed by the plain text of the Second Amendment as historically understood'" (Br. for National Shooting Sports Foundation 9 (quoting JA56)). The cited passage just articulates general principles about *Bruen* step one (JA56).

a 10-round magazine. Now assume that this person also owned a Glock 34—a classic competitive shooting handgun—and sought to conceal-carry both weapons on their person en route to a shooting range for a recreational shooting competition, rather than complying with the City's regulations about transporting firearms unloaded and secured in a locked container with the ammunition carried separately. *See* 38 R.C.N.Y. § 5-23(a)(3)(ii).

The one-handgun carry rule would allow this person to conceal-carry the Glock 19 but prevent him from simultaneously carrying the Glock 34 loaded and on their person. But this application of the rule would not affect, much less infringe, the person's right to bear arms as a means of self-defense. The right would already be satisfied by carrying an exceptionally reliable handgun with multiple rounds. Barring the person from carrying a competitive shooting handgun in order to make a recreational pursuit more convenient would not deprive him of the right to carry for self-defense.

### 1. Plaintiffs have failed to demonstrate that the text enshrines an individual right to bear multiple firearms for self-defense.

The Court could stop there, but a broader lens leads to the same place. "Bear" means to "wear, bear, or carry … for the purpose … of being

armed and ready for offensive or defensive action in a case of conflict with another person." *District of Columbia v. Heller*, 554 U.S. 570, 584 (2008) (cleaned up). Nothing in the Second Amendment's text suggests that its drafters intended to enshrine an inflexible constitutional right for each individual to carry multiple firearms for self-defense. The plain text does not get plaintiffs there. The text may use the plural "arms," but it does so only when referring to groups that would include multiple individuals (a "militia" or "the people"). U.S. Const. amend. II.

Because this Court "interpret[s] the plain text of the Amendment as historically understood," *Antonyuk*, 120 F.4th at 968, plaintiffs must demonstrate that "the Second Amendment's explicit text, 'as informed by history,' encompasses the conduct they seek to engage in," *Rocky Mt. Gun Owners*, 121 F.4th at 113 (quoting *Bruen*, 597 U.S. at 19); *see also Oakland Tactical Supply*, 103 F.4th at 1199 (finding that plaintiffs had provided insufficient historical basis on a plain-text review to establish that "long-distance training is necessary for the effective exercise of the right to keep and bear arms for self-defense"). But considering how eighteenth-century pistols operated, the drafters of the Second

Amendment likely would have viewed carrying multiple firearms for self-defense as pointless—even counterproductive.[7]

Until 1835, "'all small arms [were] single-shot weapons, requiring reloading by hand after every shot.'" *Heller*, 554 U.S. at 686 (Breyer, J., dissenting) (quoting 7 United States Encyclopedia of History 1297 (P. Oehser ed. 1967)). And because the weapons typically carried at the Founding were muzzleloading powder firearms, "they were difficult to keep loaded and at the ready for self-defense or spontaneous violence due to the powder's corrosive properties." *Or. Firearms Fed'n v. Kotek*, 682 F. Supp. 3d 874, 903 (D. Or. 2023); *accord* Joseph Blocher & Eric Ruben, *Originalism-by-Analogy and Second Amendment Adjudication,* 133 Yale L.J. 99, 153 (2023). Plaintiffs have not met their burden to demonstrate that the Second Amendment's text, as historically understood, protects the right to simultaneously carry multiple handguns for self-defense.

---

[7] This Court has noted that within the *Bruen* step two history-and-tradition analysis, it should consider the "understanding that prevailed" both during the Founding era and during the Reconstruction era, when the Second Amendment became applicable to the states through the Fourteenth Amendment. *Antonyuk*, 120 F.4th at 973-74 (cleaned up). The Court has not applied that instruction to the *Bruen* step-one analysis. Either way, Founding-era history can inform the text.

34

### 2. Plaintiffs have also failed to plausibly allege that the rule infringes the right to bear arms for self-defense.

The same conclusion flows from a different angle. While technological developments have dramatically transformed the firearm landscape since the Founding, they have done so in a way that makes it all the more clear that carrying a single firearm "secures ... a means of self-defense." *Rahimi*, 602 U.S. at 690. Plaintiffs have failed to plausibly allege that the one-handgun rule "infringes" on the right to self-defense.

Below, plaintiffs submitted copies of pages from the first American dictionary, published in 1806, containing definitions of "infringe" and its synonyms. *See* Pls.' Letter, No. 23-cv-07460-JSR, ECF No. 22. The district court concluded that for purposes of plaintiffs' challenge, the most "applicable" among those definitions was "hinder" (JA62). This definition corresponds with the conclusions of commentators examining the meaning of "infringe" at the time of the Founding, who concur that the term does not refer to "incidental burdens" and means something more restrictive than to merely "abridge." *See* Joseph Blocher & Darrell A.H. Miller, *What is Gun Control? Direct Burdens, Incidental Burdens, and the Boundaries of the Second Amendment*, 83 U. Chi. L. Rev. 295, 334-35 (Winter 2016); *accord* Daniel D. Slate, *Infringed*, 3 J. Am. Con. Hist. 381, 441 (2025) (concluding that "shall not be infringed"

35

meant at the Founding that a right could not be "violated so completely as to be destroyed" or "partially restricted through illegitimate process"). On appeal, plaintiffs propose no other definition.

Taking this definition, plaintiffs' complaint offers no reason to believe that the one-handgun rule hinders—and thus infringes—all carry license holders' ability to engage in self-defense. Indeed, "civilian self-defense rarely—if ever" requires individuals to discharge more than three shots in a single encounter. *Ocean State Tactical, LLC v. Rhode Island*, 95 F.4th 38, 45 (1st Cir. 2024) *cert. denied*, 2025 U.S. LEXIS 2129 (June 2, 2025); *accord Bianchi v. Brown*, 111 F.4th 438, 459 (4th Cir. 2024) (noting "when citizens fire shots in self-defense, they fire an average of two shots and, 97% of the time, fire five shots or fewer"), *cert. denied sub nom. Snope v. Brown*, 2025 U.S. Lexis 2172 (June 2, 2025). Some of the most common handguns in America carry 10 or more rounds of ammunition in a single magazine. *See Or. Firearms Fed'n*, 682 F. Supp. 3d at 915 (discussing Sig Sauer P320 and Glock 19); *Vt. Fed'n of Sportsmen's Clubs*, 741 F. Supp. 3d at 190 (discussing Glock 17). And the City's laws and regulations do not prevent an individual from carrying multiple magazines should they ever face the exceedingly rare situation where dozens of rounds are required for self-defense. *See*

*Ocean State Tactical*, 95 F.4th at 45 (identifying only one incident where 12 shots were fired).

To the extent plaintiffs intend to suggest that a backup handgun is necessary in the event of a handgun malfunction, their complaint offers no specific factual allegations to suggest that modern handguns have a propensity to jam or misfire. Modern handguns in common use are highly reliable, failing at exceedingly low rates. *See* Paul M. Barrett, *Glock: The Rise of America's Gun* 17 (2012) (explaining that in one test, the Glock 17 malfunctioned only once out of 10,000 rounds, even after it was dropped onto a steel plate from two meters and exposed to heat, ice, sand, and mud); *see also Hanson v. Smith*, 120 F.4th 223, 242 (D.C. Cir. 2024) (noting that "modern firearms [carrying up to 17 rounds of ammunition] do not have the propensity to jam or misfire that plagued many historical weapons"), *cert. denied sub nom. Hanson v. District of Columbia*, 2025 U.S. Lexis 2221 (June 6, 2025). Of course, if an individual is somehow constrained to carry an unreliable handgun, they can bring an as-applied challenge explaining why that is so and why not allowing them to carry a backup handgun would deny them a means of self-defense. But that is a question for another day; plaintiffs' facial challenge fails.

Finally, while plaintiffs claim that the Constitution entitles them to carry two handguns, they do not explain why their approach would not also entitle someone to carry four, 14, or even 40 handguns on their person. Plaintiffs do not contest that state and local governments may make rational line-drawing determinations about when to restrict the carrying of multiple firearms in order to prevent an unlawful offensive use. It has long been the case that the "right of natural defence does not imply a right of attacking." 4 William Blackstone, *Commentaries of the Laws of England* 184 (1769). In arguing that the Second Amendment's plain text is "unqualified" (App. Br. 19), plaintiffs would seem to leave no room for lawmakers in a city as densely populated as New York to bar a person from engaging in conduct—the carrying of many loaded firearms in public—that has no meaningful relationship with the act of self-defense and thus no connection to the "pre-existing right codified by the Second Amendment." *Bianchi*, 111 F.4th at 449 (noting that the right of self-defense does not include offensive uses of force).

### D. *The two-handgun listing rule*: plaintiffs' challenge is largely moot, and the piece seeking retrospective relief fails on the merits.

Previously, a carry license holder could only list two handguns on a license, 38 R.C.N.Y. § 5-25(d)(4) (2023), and the License Division had

38

"discretion" to reduce that number to one "when the licensee's needs [did] not require possession of two handguns," *id.* § 5-25(d)(4)(i) (2023). But that rule has been repealed and, today, a license holder can apply to list more than two handguns on a license, and the License Division must grant such an application upon compliance with objective criteria. 38 R.C.N.Y. § 5-25(g)(1) (3) (2025).[8] Because the challenged rule has been repealed, plaintiffs' claim seeking prospective relief—a declaratory judgment and injunctive relief—is moot. To the extent the claim seeks retrospective damages, it fails on the merits.

### 1. Plaintiffs cannot seek prospective relief in connection with the repealed rule.

As the district court found (JA44-46), the challenge to the two-handgun listing rule is moot to the extent plaintiffs seek a declaratory judgment and injunctive relief. Since the challenged rule has been repealed, "there is no reasonable expectation that the alleged violation will recur," and "events have completely and irrevocably eradicated the effects of the alleged violation." *Lamar Adver. of Penn, LLC v. Town of Orchard Park*, 356 F.3d 365, 375 (2d Cir. 2004) (cleaned up); *see also*

---

[8] Plaintiffs incorrectly describe the new rule as involving a "discretionary limitation" on the number of handguns that can be registered to a premises or carry license (Appellants' Br. 7 n.6). The rule provides for no such discretion, since "upon request" a licensee may add handguns to the license. 38 R.C.N.Y. § 5-25(g)(1), (3).

*Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo*, 981 F.2d 50, 61 (2d Cir. 1992) ("Constitutional challenges to statutes are routinely found moot when a statute is amended.").

By providing the district court with a copy of the City Record reflecting the rule's repeal, the City demonstrated that there was no reasonable expectation that the prior rule could be enforced. *See Granite State Outdoor Adver., Inc. v. Town of Orange*, 303 F.3d 450, 451-52 (2d Cir. 2002) (challenge moot when town amended regulation). For the same reason, the City showed that plaintiffs could "suffer[] no ongoing harm from or lingering effect" from the repealed rule. *Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 815 F.3d 105, 110 (2d Cir. 2016).

Plaintiffs do not seriously attempt to dispute the district court's conclusion on appeal. Their only response is to assert that "[t]he City regulations challenged by Appellants are not moribund" (App. Br. 30). This perfunctory assertion is insufficient to preserve a challenge to the district court's mootness ruling. *See Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) (issues waived if only addressed in "perfunctory manner") (cleaned up). The City has repealed the challenged regulation, and it has no intention of returning to the old rule.

### 2. Plaintiffs' claim for retrospective relief in connection with the rule fails.

Plaintiffs' challenge to the repealed two-handgun listing rule remains live to the extent it seeks retrospective relief, like nominal damages. But here too, plaintiffs have failed to plausibly allege that every application of the repealed rule would infringe the right to keep and bear arms as a means for self-defense.

Under the repealed rule, a carry license holder could list only two handguns on a license, but he could swap one firearm out for another by contacting the License Division, which would have no discretion but to grant the amendment (*see* JA21).[9] *See NYPD License Division*, Instructions, *available at* https://licensing.nypdonline.org/app-instruction. In other words, if a license holder had more than two handguns, he could continuously rotate through them by amending the license.

Plaintiffs do not challenge the district court's conclusion that only Mills, and not Sotomayor, has standing here (JA52-54). Mills complains that the former rule "restricted [him] to choosing from only two []"

---

[9] The repealed rule did give the License Division discretion to reduce the number of handguns listed on a carry license to one, but the complaint makes clear that none of the plaintiffs were limited in that way (JA20). So no plaintiff has standing to challenge that aspect of the rule, even to seek nominal damages. *See Uzuegbunam v. Preczewski*, 592 U.S. 279, 292-93 (2021) (holding that even in a claim for nominal damages, a plaintiff must "establish the other elements of standing"). Plaintiffs certainly have not alleged that all applications of this aspect of the rule are unlawful.

handguns" from which he could "decide … to carry on any particular day" (JA21-22). But nothing in the Second Amendment's text reflects an individual right to choose on a daily or hourly basis which out of a selection of three or more handguns to carry at a given time. The Second Amendment "secures for Americans a means of self-defense." *Rahimi*, 602 U.S. at 690. It does not recognize a constitutional right to choose among an unlimited selection of handguns on demand.

Meanwhile, Mills does not allege that he even attempted to amend his carry license to swap one handgun for another, or that he had reason to believe that such a request would have been denied or that it would have taken a substantial amount of time (*see also supra* at 25 n.3).[10] For many of the same reasons already discussed, whatever "administrative burden" may have been involved in amending the license (JA63)—had Mills ever sought to do so—is a far cry from an infringement of the right to carry arms for self-defense. This is just another aspect of the City's "shall issue" licensing regime, and plaintiffs' complaint offers no specific

---

[10] Even assuming the process entailed some delays, that would not be enough to state a claim. *Cf. Md. Shall Issue*, 116 F.4th at 216-17 (finding licensing with background checks constitutional); *McRorey*, 99 F.4th at 836 ("*Bruen* and *Heller* make clear that background checks preceding firearm sales are presumptively constitutional."). It is not nearly enough to support a facial challenge.

factual allegations that the two-handgun listing rule was ever "put toward abusive ends." *Bruen*, 597 U.S. at 38 n.9 (cleaned up).

### E. *The authorization form rule and handgun registration rule*: plaintiffs lack standing to challenge the rule, and they have not plausibly alleged that every application is unlawful.

The district court rightly held that plaintiffs lack standing to challenge the authorization form rule and the handgun registration rule (JA49-50). Plaintiffs have abandoned any argument to the contrary. Their brief to this Court talks about standing only in the abstract, without tethering their standing arguments to specific claims (App. Br. 25-30). But standing is "not dispensed in gross," and plaintiffs "must establish standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Plaintiffs' standing arguments therefore should be rejected out of hand.

Regardless, plaintiffs have failed to allege a concrete injury traceable to the requirement that they obtain an authorization form before purchasing a firearm. Mills is the sole relevant plaintiff, and he alleges only that he was unable to obtain an authorization form because the anti-trafficking law prevented him from purchasing an additional handgun (*see* JA21 ¶ 89). But that is a harm arising from an application of the anti-trafficking law, not the authorization-form requirement. *See*

43

*Coal. for Competitive Elec. v. Zibelman*, 906 F.3d 41, 58 (2d Cir. 2018) (injuries "not traceable" to challenged action do not establish standing).

Plaintiffs have also failed to identify a concrete injury traceable to the handgun registration rule. As the district court observed, plaintiffs failed to allege any injury resulting from "the mere act of registering [their] firearm[s]" (JA50). Absent a "particularized injury," the claim fails. *Ritchie Capital Mgmt., L.L.C. v. GE Capital Corp.*, 821 F.3d 349, 351 (2d Cir. 2016). And the same holds for plaintiffs' purported challenge to authorization requirements contained in 38 R.C.N.Y. § 5-22(a)(9) & (10)—challenges that plaintiffs have abandoned on appeal by failing to develop a meaningful argument. *Tolbert*, 242 F.3d at 75.

Regardless of these impediments to standing, plaintiffs' challenges to the authorization form rule and handgun registration rule would fail on the merits. Plaintiffs cannot credibly dispute the constitutionality of non-discretionary, non-abusive firearm regulations that allow the government to confirm that a firearm purchase is authorized. *Bruen*, 597 U.S. at 38 n.9; *see also Md. Shall Issue*, 116 F.4th at 216-17 (upholding requirement that prospective purchasers obtain a qualification license and apply to government for permission to purchase a handgun); *McRorey*, 99 F.4th at 834-36 (upholding expanded background check for 18 to 20 year olds).

44

The authorization form rule and handgun registration rule are cut from the same cloth. They are part of the body of rules that exist to ensure that those purchasing or otherwise obtaining firearms are among the law-abiding persons qualified to possess a firearm and that they maintain safekeeping measures for storing their weapons so that only license holders can use them. *See generally* 38 R.C.N.Y. §§ 5-22, 5-25. The rules are presumptively constitutional, and plaintiffs have not plausibly alleged that they have been put toward abusive ends or that they infringe the right to keep or bear arms for self-defense.

### F. *The dealer reporting law*: plaintiffs lack standing to challenge this law too, and on the merits dealers' reporting obligations raise no Second Amendment question.

The district court also correctly found that plaintiffs lack standing to challenge the dealer reporting law (JA51-52), which includes requirements for how firearm dealers communicate with law enforcement when selling firearms, as well as associated record-keeping and compliance requirements. *See* N.Y.C. Admin. Code § 10.302.1(c)-(e). Nothing in the complaint suggests that plaintiffs are impacted by dealers' reporting obligations (JA16). That may be why plaintiffs' brief to this Court fails to make, and thus abandons, any argument about the law.

45

Plaintiffs retreat from their challenge for good reason. The dealer reporting law is addressed to administrative steps that dealers must take when selling firearms. The law is at least two steps removed from the constitutional text. It does not directly regulate the keeping and bearing of firearms. It does not even restrict the acquisition and sale of firearms. It merely establishes reporting requirements around firearm sales. There is no plausible argument that the law's approach to dealers' administrative obligations infringes upon the people's right to keep and bear arms for self-defense (*see supra* at 25-27).

*   *   *

This Court should affirm the district court's judgment at *Bruen* step one. But should the Court find that any claim survives that step, it should remand, rather than engage in the step-two analysis without the benefit of comprehensive historical submissions, analysis, and briefing, as well as a full and definitive analysis from the district court.

## CONCLUSION

The order on appeal should be affirmed.

Dated:  New York, New York
         June 23, 2025

Respectfully submitted,

MURIEL GOODE-TRUFANT
*Corporation Counsel*
*of the City of New York*
Attorney for Appellee

By:  _____/s/ Jeremy W. Shweder_____
     JEREMY W. SHWEDER
     Assistant Corporation Counsel

     100 Church Street
     New York, New York 10007
     212-356-0843
     jshweder@law.nyc.gov

RICHARD DEARING
DEVIN SLACK
JEREMY W. SHWEDER
GEOFFREY E. CURFMAN
   *of Counsel*

47

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief was prepared using Microsoft Word, and according to that software, it contains 10,118 words, not including the table of contents, table of authorities, this certificate, and the cover.

_____/s/ Jeremy W. Shweder_____
JEREMY W. SHWEDER